# UNITED STATES BANKRUPTCY APPELLATE PANEL
# FOR THE FIRST CIRCUIT

---

## BAP NO. MW 23-03

---

## Bankruptcy Case No. 21-40248-EDK

---

## SCOTT H. BLUMSACK,
**Debtor**

---

## SCOTT H. BLUMSACK
**Appellant,**

**v.**

## WILLIAM K. HARRINGTON, United States Trustee,
**Appellee.**

---

**On appeal from the United States Bankruptcy Court for the
District of Massachusetts**

---

### BRIEF FOR APPELLANT, SCOTT H. BLUMSACK

By his Attorney,
/s/ Dmitry Lev
Dmitry Lev BBO # 665236
Law Offices of D. Lev, PC
134 Main Street
Watertown, MA 02472
Tel: (617) 556-9990
dlev@levlaw.net

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. 3

STATEMENT REGARDING ORAL ARGUMENT ...................................... 6

JURISDICTIONAL STATEMENT ................................................................ 6

STATEMENT OF THE ISSUES .................................................................... 7

STANDARD OF REVIEW ............................................................................ 8

STATEMENT OF THE CASE ........................................................................ 9

SUMMARY OF ARGUMENT ..................................................................... 13

ARGUMENT ................................................................................................ 14

I.     Dismissal for lack of good faith found solely based on the type of Debtor's employment was error........................................................................................................... 14

II.     Dismissal under Section 105 for abuse of process was error, as there is no unconscionable scheme that prejudices the parties................................................... 25

III.     Denial of confirmation and denial of opportunity to file an amended plan was error ... 29

    a)     Lack of good faith finding under § 1325(a)(3) was erroneous; the court looked to factors beyond the manner of proposal of the plan .................................................. 30

    b)     Denial of opportunity to propose a plan funded by sources unrelated to cannabis was error  33

CONCLUSION ............................................................................................. 34

CERTIFICATE OF COMPLIANCE PURSUANT TO FED. R. BANKR. P. 8015(h) .............. 35

STATEMENT REGARDING RELATED CASES........................................ 36

STATEMENT REGARDING INTERESTED PARTIES ............................. 37

CERTIFICATE OF SERVICE .................................................................... 38

# TABLE OF AUTHORITIES

**Cases**

Arenas v. United States Trustee (In re Arenas), 535 B.R. 845 (B.A.P. 10th Cir. 2015) . 21, 22, 23, 24

Belser v. Nationstar Mortg., LLC (In re Belser), 534 B.R. 228 (B.A.P. 1st Cir. 2015) ................. 8

Benoit v. Deutsche Bank Nat'l Tr. Co. (In re Benoit), 564 B.R. 799 (B.A.P. 1st Cir. 2017)......... 6

Bentley v. Boyajian (In re Bentley), 266 B.R. 229 (B.A.P. 1st Cir. 2001)..................................... 9

Burton v. Maney (In re Burton), 610 B.R. 633 (B.A.P. 9th Cir. 2020) ................................... 16, 32

Cabral v. Shamban (In re Cabral), 285 B.R. 563 (B.A.P. 1st Cir. 2002)................................... 9, 30

Fid. & Cas. Co. of N.Y. v. Warren (In re Warren), 89 B.R. 87 (B.A.P. 9th Cir. 1988) ................. 9

Garvin v. Cook Invs. NW, SPNWY, LLC, 922 F.3d 1031 (9th Cir. 2019)...................... 21, 31, 32

Gonzalez-Ruiz v. Doral Fin. Corp. (In re Gonzalez-Ruiz), 341 B.R. 371 (B.A.P. 1st Cir. 2006) ................................................................................................................................... 19, 20

In re CWNevada LLC, 602 B.R. 717 (Bankr. D. Nev. 2019)............................................... passim

In re Dunson, 550 B.R. 537 (Bankr. D. Kan. 2016) ....................................................... 24

In re Escarcega, 573 B.R. 219 (B.A.P. 9th Cir. 2017) ..................................................... 9

In re Food City, Inc., 110 B.R. 808 (Bankr. W.D. Tex. 1990) ..................................... 21

In re Freedom Industries, Inc., Case No. 14-bk-20017 (Bankr. S.D. W.Va. Jan. 17, 2014) ........ 15

In re Gen. Dev. Corp., 135 B.R. 1002 (Bankr. S.D. Fla. 1991)................................... 31

In re Hacienda Co., LLC, 647 B.R. 748 (Bankr. C.D. Cal. 2023)................................... 15, 17, 20

In re Holman, 567 B.R. 599 (Bankr. D. Kan. 2017)..................................................... 20

In re Johnson, 532 B.R. 53 (Bankr. W.D. Mich. 2015) ............................................. 26, 27, 28, 33

In re McGinnis, 453 B.R. 770 (Bankr. D. Or. 2011) ................................................... 33

In re Nevel Props. Corp., No. 09-00415, 2012 Bankr. LEXIS 551 (Bankr. N.D. Iowa Feb. 17, 2012) ................................................................................................................... 18

In re Rent-Rite Super Kegs W. Ltd., 484 B.R. 799 (Bankr. D. Colo. 2012) ................... 27, 28, 29

Irving Tanning Co. v. Me. Superintendent of Ins., 496 B.R. 644 (B.A.P. 1st Cir. 2013) ...... 31, 32

Lessard v. Wilton-Lyndeborough Coop. Sch. Dist., 592 F.3d 267 (1st Cir. 2010) ....................... 8

Marrama v. Citizens Bank, 549 U.S. 365, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007).................. 29

Midlantic Nat'l Bank v. New Jersey Dept. of Envt'l Prot., 474 U.S. 494, 106 S.Ct. 755, 88 L. Ed.
   2d 859 (1986).................................................................................................... 15

Ne. Patients Grp. v. United Cannabis Patients & Caregivers of Me., 45 F.4th 542 (1st Cir. 2022)
   ................................................................................................................... 28

Neufeld v. Freeman, 794 F.2d 149 (4th Cir. 1986)........................................................... 29

Perlin v. Hitachi Capital Am. Corp. (In re Perlin), 497 F.3d 364 (3d Cir. 2007) ........................ 24

Ritzen Grp., Inc. v. Jackson Masonry, LLC, 140 S. Ct. 582 (2020)........................................ 6

Stevenson v. TND Homes I, LP (In re Stevenson), 583 B.R. 573 (B.A.P. 1st Cir. 2018) ............. 6

Sullivan v. Solimini (In re Sullivan), 326 B.R. 204 (B.A.P. 1st Cir. 2005) ................................ 20

Tamecki v. Frank (In re Tamecki), 229 F.3d 205 (3d Cir. 2000) ................................................ 25

Torres-Vargas v. Pereira, 431 F.3d 389 (1st Cir. 2005) ..................................................... 20

Trevino v. HSBC Mortg. Servs. (In re Trevino), 615 B.R. 108 (Bankr. S.D. Tex. 2020)...... 26, 29

United States v. Sutton, 786 F.2d 1305 (5th Cir. 1986)..................................................... 25

Witkowski v. Boyajian (In re Witkowski), 523 B.R. 300 (B.A.P. 1st Cir. 2014) ............. 9, 19, 22

**Statutes**

11 U.S.C.  §§ 101 et seq................................................................................................. 6

11 U.S.C. §  105 ............................................................................................... passim

11 U.S.C. §  362(b)(1) ..................................................................................................... 21

11 U.S.C. § 1112(b)(4) ................................................................................................... 16

11 U.S.C. § 1129(a)(3)................................................................................ 30, 31, 32

11 U.S.C. § 1304 ........................................................................................................ 27

11 U.S.C. § 1307(c) ........................................................................................... passim

11 U.S.C. § 1307(c)(5)................................................................................. 8, 13, 29, 34

11 U.S.C. § 1325(a)(3)................................................................................ passim

11 U.S.C. § 1325(a)(4)................................................................................ 11

11 U.S.C. § 1325(a)(7)................................................................................ 7, 12

28 U.S.C. § 158(a)-(c)................................................................................ 6

**Rules**

1st Circuit BAP L.R. 8019-1........................................................................ 6

Fed. R. Bankr. P. 8002(a)(1)....................................................................... 7

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to 1st Circuit BAP L.R. 8019-1, Appellant Scott H. Blumsack respectfully submits that oral argument is warranted and should be allowed in this appeal.  This matter raises a novel issue of law in this Circuit: whether an employee of a state-authorized cannabis retailer is ineligible for bankruptcy relief solely due to the nature of his employment.  The Panel's consideration of this issue of first impression is likely to be aided and advanced by oral argument from the parties. Appellant, accordingly, respectfully requests an oral argument.

## JURISDICTIONAL STATEMENT

This court has jurisdiction to hear appeals from final orders. See 28 U.S.C. § 158(a)-(c); see also Ritzen Grp., Inc. v. Jackson Masonry, LLC, 140 S. Ct. 582, 587 (2020)  "An order dismissing a [c]hapter 13 case is a final, appealable order." Benoit v. Deutsche Bank Nat'l Tr. Co. (In re Benoit), 564 B.R. 799, 804 (B.A.P. 1st Cir. 2017) (citations and internal quotation marks omitted).  See also Stevenson v. TND Homes I, LP (In re Stevenson), 583 B.R. 573, 578 (B.A.P. 1st Cir. 2018) (same).

The underlying matter is a Chapter 13 proceeding under the US Bankruptcy Code, 11 U.S.C. §§ 101 et seq.  An Order dismissing the case was entered on January 17, 2023.  A timely Notice of

6

Appeal was filed on January 30, 2023. Fed. R. Bankr. P. 8002(a)(1).

## STATEMENT OF THE ISSUES

1. Did the Bankruptcy Court err in dismissing the Debtor's Chapter 13 case holding that the Debtor's employment at cannabis dispensaries which involved activities that – while permitted under state law – ostensibly violated federal criminal laws demonstrated lack of good faith and was cause for dismissal of the case pursuant to 11 U.S.C. § 1307(c)?

2. Did the Bankruptcy Court err in dismissing the Debtor's Chapter 13 case pursuant to 11 U.S.C. § 105(a) holding that it would be an abuse of process to permit the Debtor to obtain the protections and benefits of the federal bankruptcy laws while continuing employment which involves activities that – while permitted under state law – ostensibly violate federal criminal laws?

3. Did the Bankruptcy Court err in denying confirmation of the Debtor's Chapter 13 Plan holding that the Debtor's Chapter 13 case was not filed in good faith pursuant to 11 U.S.C. § 1325(a)(7) based on the Debtor's employment at cannabis dispensaries which involved activities that – while permitted under state law – ostensibly violated federal criminal laws?

4. Did the Bankruptcy Court err in denying confirmation of the Debtor's Chapter 13 Plan holding that the Debtor's Chapter 13 Plan was not proposed in good faith pursuant to 11 U.S.C. § 1325(a)(3) based on the Debtor's employment at cannabis dispensaries which involved activities that – while permitted under state law – ostensibly violated federal criminal laws?

5. Did the Bankruptcy Court err in denying the Debtor an opportunity to file a modified Chapter 13 Plan funded exclusively from sources unrelated to cannabis and in dismissing the Debtor's Chapter 13 case pursuant to 11 U.S.C. § 1307(c)(5) where the Debtor has not discontinued his employment at cannabis dispensaries which involves activities that – while permitted under state law – ostensibly violate federal criminal laws?

## STANDARD OF REVIEW

"Appellate courts apply the clearly erroneous standard to findings of fact and de novo review to conclusions of law." Belser v. Nationstar Mortg., LLC (In re Belser), 534 B.R. 228, 233 (B.A.P. 1st Cir. 2015) (citing Lessard v. Wilton-Lyndeborough Coop. Sch. Dist., 592 F.3d 267, 269 (1st Cir. 2010)). "[The Panel] review[s] a bankruptcy court's decision to dismiss a chapter 13 case for abuse of discretion." Witkowski v. Boyajian (In re Witkowski), 523 B.R. 300, 305 (B.A.P. 1st

8

Cir. 2014) (internal citations omitted). "An abuse of discretion occurs when the trial court ignores a material factor deserving significant weight, relies upon an improper factor, or assesses all proper and no improper factors, but makes a serious mistake in weighing them." Id. (internal citations omitted).  "A finding of bad faith, as a basis for granting a motion to convert or dismiss under § 1307(c), is reviewed for clear error." Cabral v. Shamban (In re Cabral), 285 B.R. 563, 570 (B.A.P. 1st Cir. 2002).

"The standard of review for a denial of confirmation is two part: (1) factual questions are reviewed for clear error; and (2) legal questions are reviewed de novo.  An exercise of discretion based on an incorrect conclusion of law is also reviewed de novo." In re Escarcega, 573 B.R. 219, 230 (B.A.P. 9th Cir. 2017) (citing Fid. & Cas. Co. of N.Y. v. Warren (In re Warren), 89 B.R. 87, 90 (B.A.P. 9th Cir. 1988)).  Where denial of confirmation presents questions of law, these are also reviewed de novo.  Bentley v. Boyajian (In re Bentley), 266 B.R. 229, 234-35 (B.A.P. 1st Cir. 2001).

## STATEMENT OF THE CASE

The Debtor commenced this case on April 1, 2021, by filing a voluntary petition under Chapter 13 of the Bankruptcy Code. Appellant's Appendix (hereinafter "App.") at 253.  On Schedule I, the Debtor listed his occupation as "Sales" at "Green Star

Herbal," a retail cannabis dispensary.  Id.  In September 2021,
the United States Trustee filed a Motion to Dismiss, also
objecting to confirmation of the Debtor's proposed Chapter 13
plan.  Id.  Debtor opposed the Motion and the Court conducted an
evidentiary hearing on March 11, 2022, at which the Debtor
testified and for which the parties submitted stipulations.
App. at 136-37, 253.  As of September 2021 and at the time of
trial, the Debtor no longer worked for Green Star Herbal, but
was employed by TYCA Green, Inc. d/b/a Society Cannabis Co.
("TYCA Green"), a retailer, wholesaler, and producer of cannabis
products.  TYCA Green has a cultivation license, and its
products include smokable, edible, and other cannabis products.
Id.

   As of December 2021, Debtor was the general manager of a TYCA
Green facility located in Clinton, Massachusetts.  Debtor was
involved in all aspects of operations at the Clinton facility,
including retail, wholesale, production, marketing, and human
resources.  The Debtor was one of three on the Clinton
facility's management team, which included the Debtor, the chief
executive officer, and the chief operating officer.  Id.  Debtor
supervised the sixteen full-time employees at the Clinton
facility.  Id.  Debtor is licensed under Massachusetts law to
dispense cannabis products, and he would often cover shifts in
the retail operation.  App. at 254.  Debtor does not have any

10

ownership interest in TYCA Green, nor has he been promised any.
Id.  Debtor's paystubs indicated that he earns $75,000 per year.
Id.

Debtor testified that, during the pandemic, his spouse
accessed her retirement funds and deposited what the Debtor
believed to be more than $70,000 initially into their joint
checking account, later transferring those funds into a savings
account.  Id.

Earlier in the proceeding, the Chapter 13 Trustee objected to
the confirmation of the Debtor's Chapter 13 Plan, raising inter
alia the issue of these retirement funds not being contributed
to the then-proposed version of plan, afoul of the requirements
of 11 U.S.C. § 1325(a)(4).  App. at 88-91.  To resolve the
objection, Debtor and the Chapter 13 Trustee entered into a
stipulation, App. at 131, which was approved at the March 11,
2022, hearing.  App. at 142.  The stipulation provided, inter
alia, that the Debtor is to make a lump sum payment of $12,000
within 30 days, and within 30 days of the resolution of the US
Trustee's Motion to Dismiss the Debtor is to file an amended
plan to provide no less than a 100% dividend to unsecured
creditors, other than a student loan which would be treated
outside the plan.  App. at 131.  A 100% plan became possible
because upon the expiration of all deadlines for the filing of
claims the allowed unsecured claims (other than the student

11

loan) totaled approximately $24,000 (App. at 151-52, Trustee stating that the $12,000 lump sum payment would cover 50% of claims other than the student loan), which was far less than the $557,297.94 initially indicated on the Debtor's Schedules.  App. at 55.

At the evidentiary hearing, Debtor testified that, in lieu of using the Debtor's wages to fund the Chapter 13 Plan, the plan payments could instead be made from the retirement funds.  App. at 254.

At the conclusion of the March 11, 2022, hearing the court took the matters under advisement and requested post-trial briefs, which were submitted by both parties (App. at 147, 190-227, 228-51).

On January 17, 2023, the court issued its Memorandum of Decision, App. at 252-70, sustaining US Trustee's Objection to Confirmation and granting the US Trustee's Motion to Dismiss. The court found that Debtor's employment responsibilities violate several federal criminal statutes, App. at 262, and that therefore the case was not filed in good faith as required by 11 U.S.C. § 1325(a)(7).  App. at 265.  Similarly, the court found that the plan was not proposed in good faith as required by 11 U.S.C. § 1325(a)(3), and that therefore confirmation must be denied.  App. at 265.  Further, the court found that such lack of good faith constitutes cause for dismissal pursuant to 11

U.S.C. § 1307(c), including § 1307(c)(5), as the court also
denied the debtor's request for an opportunity to propose an
amended plan funded solely by his spouse's wages or retirement
funds, which are not connected to cannabis.  App. at 267.
Moreover, the court held that the case must also be dismissed
for abuse of process under 11 U.S.C. § 105.  App. at 267-68.

Via this timely appeal, App. at 272, Debtor challenges the
dismissal of his Chapter 13 case, denial of confirmation, and
denial of an opportunity to submit an amended plan funded by
funds unrelated to cannabis.

## SUMMARY OF ARGUMENT

The United States Trustee's Motion to Dismiss and Objection to
Confirmation should not have been allowed and sustained merely
because the Debtor's employer is a state-authorized cannabis
retailer, an activity currently unlawful under the Federal
Controlled Substances Act, which is at odds with state law.
Because bankruptcy courts have a long history of granting relief
to debtors whose activities included violations of criminal
laws, and because Congress did not adopt a zero tolerance policy
requiring dismissal of any bankruptcy case involving a violation
of the Controlled Substances Act, where, as here, an individual
Debtor is not a stakeholder but a mere employee at a state-
authorized cannabis retailer and where the reason for the
bankruptcy filing is unrelated to cannabis, the nature the

Debtor's employment should not serve as basis for finding a lack of good faith, nor an abuse of process, nor as cause for dismissal, nor as a bar to obtaining bankruptcy relief. Thus, the matter should not have been dismissed.

Unlike other cases where debtors were unable to propose a plan that does not rely on cannabis-derived income, here the Debtor had already entered into a stipulation with the Chapter 13 Trustee – who did not join the United States Trustee in moving to dismiss – obligating the Debtor to propose a 100% plan which can be funded in whole from non-cannabis sources, namely his non-filing spouse's retirement withdrawal and non-filing spouse's wages. This plan would pay 100% of all allowed unsecured claims, other than a long-term student loan, which would be paid outside of the plan. Accordingly, Debtor should have been afforded the opportunity to file an amended plan consistent with his stipulation with the Chapter 13 Trustee.

## ARGUMENT

### I. Dismissal for lack of good faith found solely based on the type of Debtor's employment was error

The Bankruptcy Court dismissed the Debtor's Chapter 13 case "for cause" pursuant to § 1307(c), citing lack of good faith because "[t]he Debtor filed this voluntary Chapter 13 case while engaging in activities in the course of his employment that violate federal criminal laws and, in his new employment, the

14

Court has found that his actions continue to violate federal

criminal laws[,]" App. at 265, specifically the Controlled

Substances Act (CSA).  App. at 261.

As one court observed:

> It is worth noting, however, that bankruptcy courts have
> a long history of considering cases involving debtors
> whose activities and operations have included past,
> present and possibly ongoing violations of applicable
> non-bankruptcy, civil and criminal laws. See, e.g.,
> Midlantic Nat'l Bank v. New Jersey Dept. of Envt'l Prot.,
> 474 U.S. 494, 106 S.Ct. 755, 88 L. Ed. 2d 859 (1986)
> (voluntary Chapter 11 of waste oil processor that
> possessed leaking containers of cancer-causing
> substances in violation of state and local law was
> converted to Chapter 7, rather than dismissed); In re
> Freedom Industries, Inc., Case No. 14-bk-20017 (Bankr.
> S.D. W.Va. Jan. 17, 2014) (voluntary Chapter 11 filed by
> chemical producer after chemical spill contaminated Elk
> River; Chapter 11 plan of reorganization confirmed even
> though the debtor and officers were subsequently
> sentenced for criminal violations of the federal Clean
> Water Act and federal Refuse Act). See also NCR Staff,
> Catholic Dioceses and Orders that Filed for Bankruptcy
> and Other Major Settlements, National Catholic Reporter
> (May 31, 2018), available at https://www.ncronline.org/
> news/accountability/catholic-diocesese-and-orders-
> filed-bankruptcy-and-other-major-settlements  (last
> visited May 31, 2019) (listing all Catholic diocese
> bankruptcy proceedings filed from July 6, 2004 through
> approximately February 28, 2018, to address sexual abuse
> claims against clergy).

In re CWNevada LLC, 602 B.R. 717, 728 n.25 (Bankr. D. Nev.

2019).

Specifically with respect to the Controlled Substances Act,

the recent case of In re Hacienda Co., LLC, 647 B.R. 748 (Bankr.

C.D. Cal. 2023) provided a discussion so pertinent to the

instant matter that it warrants a recitation in full:

Congress did not adopt a "zero tolerance" policy that requires dismissal of any bankruptcy case involving violation of the CSA (or other activity that might be proven to be illegal). See [Burton v. Maney (In re] Burton[)], 610 B.R. [633,] 637 [(B.A.P. 9th Cir. 2020)] (no per se rule requiring dismissal when marijuana is present).

True, Congress has enacted the CSA and this Bankruptcy Court's duty is to follow Congressional directives. On the other hand, Congress has not specified what should be the bankruptcy-specific remedy for any violation of the CSA.

Congress could have included within the examples of "cause" in § 1112(b)(4) a violation of the CSA, or any other nonbankruptcy laws, but it chose not to do so. This implies that violations of nonbankruptcy laws do not necessarily constitute cause for dismissal or conversion.

In addition, such a broad reading of "cause" for dismissal could be extremely disruptive in other cases before this Bankruptcy Court, perhaps even the vast majority of all bankruptcy cases. See, e.g., In re CWNevada LLC, 602 B.R. 717, 728 n. 25 (Bankr. D. Nev. 2019) ("bankruptcy courts have a long history of considering cases whose activities and operations have included past, present and possibly ongoing violations of applicable non-bankruptcy, civil and criminal laws") (citing examples); Hon. Keith M. Lundin (Ret.), Up in Smoke, Bankruptcy Workshop, Season 2, Episode 3, available at https://lundinonchapter13.com/Content/WorkshopVideos (last visited on January 18, 2023) (noting bankruptcy courts' and trustees' statutory mandate to administer assets, and extensive history of doing so notwithstanding some connection to illegal activity).

Dismissing every case that had a connection with illegal activity would be contrary to Congress' directives under the Bankruptcy Code. Consider what would happen if the doors of the bankruptcy courts were closed to any debtor who had crossed the line into illegal activity prepetition, and were attempting to wind up that activity postpetition.

Some of the largest business bankruptcy cases, like those of Pacific Gas & Electric Co. of "Erin Brockovich" fame, Enron Corporation, and Bernie Madoff, involve alleged or actual criminal activity. Should those cases have been dismissed? How about cases involving sexual

abuse? See CWNevada, 602 B.R. at 728 n. 25 (citing, inter alia, NCR Staff, Catholic Diocese and Orders that Filed for Bankruptcy and Other Major Settlements, National Catholic Reporter (2018), https://www.ncronline.org/news/catholic-dioceses-and-orders-filed-bankruptcy-and-other-major-settlements (last visited on January 18, 2023) (listing numerous bankruptcy proceedings to address sexual abuse claims, from July 6, 2004 through approximately February 28, 2018)).

On a smaller scale, this Bankruptcy Court takes judicial notice that many small business bankruptcies involve restaurants or small apartment buildings, and most of those businesses have at least some ongoing level of violations of health and safety regulations. When dealing with food and shelter, although it is important to strive for perfection, realistically that goal can be extremely difficult to achieve.

Likewise, many individual debtors have crossed the line into illegality in ways both large and small, from engaging in criminal gang activity to failing to pay taxes or parking fines. This Bankruptcy Court takes judicial notice that individuals who are struggling financially may have difficulty paying parking fines, for example, and there are societal debates about the criminalization of nonpayment of such fines, so barring such a debtor from bankruptcy would not be a step to take lightly.

If all of the foregoing examples were sufficient "cause" for mandatory dismissal, this Bankruptcy Court might have to dismiss most bankruptcy cases. That would harm the constituencies that Congress attempted to protect using all of the tools of the Bankruptcy Code, including creditors, debtors, employees of debtors, and local governments and communities that depend on debtors' ability to reorganize their finances and resume making contributions to commerce and society.

In re Hacienda Co., LLC, 647 B.R. at 754-55.

The tale of Agriprocessors, Inc., illustrates this point on a larger scale. Agriprocessors, Inc., was the largest kosher

meat-packing plant in the United States headquartered in

Postville, Iowa[1].

> On May 12, 2008, U.S. Immigration and Customs
> Enforcement executed a criminal worksite enforcement
> operation at Agriprocessors' plant.  The majority of
> Agriprocessors' workers were undocumented immigrants.
> During the raid, a total of 389 workers at the plant
> were arrested. The raid led to numerous federal criminal
> charges, including a high-profile case against
> Agriprocessors' then-President, Sholom Rubashkin.
> As a result of financial difficulties following the May
> 2008 immigration raid, Agriprocessors filed a Chapter 11
> bankruptcy petition on November 4, 2008.  The case was
> eventually converted to Chapter 7.  In the Chapter 7,
> SHF [Industries] purchased virtually all of
> Agriprocessors' assets, including the processing plant
> – now run by SHF under the name Agri-Star.

In re Nevel Props. Corp.[2], No. 09-00415, 2012 Bankr. LEXIS

551, at *2-3 (Bankr. N.D. Iowa Feb. 17, 2012).

In re: Agriprocessors, Inc., Docket No. 08-02751, United

States Bankruptcy Court for the Northern District of Iowa,

spawned extensive litigation, including over 145 Adversary

Proceedings, most brought by the Chapter 7 Trustee Joseph E.

Sarachek.  See CM/ECF United States Bankruptcy Court for the

Northern District of Iowa, https://ecf.ianb.uscourts.gov//cgi-

bin/iqquerymenu.pl?77608 (last visited November 18, 2022).  The

issues of ongoing illegal labor practices and other crimes,

tracing assets to the fruits thereof, or the trustee

---

[1] See https://en.wikipedia.org/wiki/Agriprocessors (last visited November 18, 2022).

[2] While the debtor in Nevel Props. leased land to Agriprocessors, Inc., this case is being cited solely because it provides a concise summary of the events leading up to the Agriprocessors, Inc., bankruptcy.

administering assets potentially tainted by criminal activity do
not appear to have been raised, and did not preclude
Agriprocessors, Inc., from seeking and obtaining relief under
the Bankruptcy Code.

In reviewing the Bankruptcy Court's finding of lack of good
faith for clear error, and the dismissal order for abuse of
discretion, this is precisely the case where "the trial court
ignores a material factor deserving significant weight, relies
upon an improper factor, or assesses all proper and no improper
factors, but makes a serious mistake in weighing them."  In re
Witkowski, 523 B.R. at 305.  Here, the Bankruptcy Court hyper-
focused on type of wares the Debtor's employer legally peddles
under state law, while failing to weigh the other factors
applicable to the good-faith analysis:

> In applying the totality of the circumstances test to
> determine whether a Chapter 13 petition has been filed
> in bad faith, bankruptcy courts generally consider the
> following factors: (1) the debtor's accuracy in stating
> her debts and expenses, (2) the debtor's honesty in the
> bankruptcy process, including whether he or she has
> attempted to mislead the court and whether he or she has
> made any misrepresentations, (3) whether the Bankruptcy
> Code is being unfairly manipulated, (4) the type of debt
> sought to be discharged, (5) whether the debt would be
> dischargeable in a Chapter 7, and (6) the debtor's
> motivation and sincerity in seeking Chapter 13 relief.

Gonzalez-Ruiz v. Doral Fin. Corp. (In re Gonzalez-Ruiz), 341
B.R. 371, 383 (B.A.P. 1st Cir. 2006) (internal citations
omitted).

While "the factors to be considered may vary in each case."
Sullivan v. Solimini (In re Sullivan), 326 B.R. 204, 212 (B.A.P.
1st Cir. 2005), in the instant case, the Bankruptcy Court has
failed to consider any of the six Gonzalez-Ruiz factors.
Instead, the Bankruptcy Court erred in holding that the mere
suggestion of ostensible criminal conduct, even if only in the
course of the Debtor's state-lawful employment, negates good
faith in the filing of the petition, and that this sole factor
is sufficient cause for dismissal.  This was error, because
"dismissal orders typically are measures of last resort,
reserved for extreme cases."  Torres-Vargas v. Pereira, 431 F.3d
389, 393 (1st Cir. 2005) (discussing dismissal as a sanction).
This is because dismissal is a draconian remedy.  See generally
In re Holman, 567 B.R. 599, 608 (Bankr. D. Kan. 2017).
"Congress has not specified what should be the bankruptcy-
specific remedy for any violation of the CSA. … [T]here are many
non-bankruptcy tools that can be used to address any illegal
activity.  Remedies can be sought, in appropriate situations, by
prosecutors, private attorneys general, class action
representatives, individual plaintiffs, and others, such as
local, state, and national governments, to address any
violations of nonbankruptcy law in a more nuanced and targeted
manner than the blunt tool of dismissing bankruptcy cases."  In
re Hacienda Co., LLC, 647 B.R. at 755, 757.

20

This approach is already contemplated in 11 U.S.C. § 362(b)(1), which provides that the automatic stay does not apply to "the commencement or continuation of a criminal action or proceeding against the debtor".

Beyond this, courts have held that there is "no need to convert the bankruptcy judge into an ombudsman without portfolio, gratuitously seeking out possible illegalities in every plan, a result that would be inimical to the basic function of bankruptcy judges in bankruptcy proceedings." Garvin v. Cook Invs. NW, SPNWY, LLC, 922 F.3d 1031, 1036 (9th Cir. 2019) (quoting In re Food City, Inc., 110 B.R. 808, 812 (Bankr. W.D. Tex. 1990)) (internal quotation marks and citations omitted).

The Bankruptcy Court cites Arenas v. United States Trustee (In re Arenas), 535 B.R. 845, 852 (B.A.P. 10th Cir. 2015) for the proposition that lack of good faith carries an objective component. In Arenas, the court concluded that, since "[a]ny plan proposed by the Debtors would necessarily be executed by unlawful means … [the court was] unable to find, under § 1325(a)(3), that their plan [was] proposed in good faith and not by any means forbidden by law[,]" and that "[i]f the debtors are incapable of proposing a confirmable plan, it is objectively unreasonable for them to seek Chapter 13 relief whether their intentions are kindly or not." Id. at 851, 853-54. The instant

21

matter is distinguishable, because "the Arenases' monthly income from sources other than marijuana was not enough to fund their plan." Id. at 852. "[T]he only way they [could] fund a plan is with the rental income from the marijuana dispensary." Id. "Without the rental income, their monthly expenses of $7,000 exceed[ed] their non-marijuana income by $4,000 a month." Id. Mrs. Arenas was disabled and unable to work, while Mr. Arenas' "age and employment history, amply support[ed] a finding that the debtors' income is unlikely to increase during the plan term." Id.

This is not the case in the instant matter, and this an instance where the Bankruptcy Court "ignore[d] a material factor deserving significant weight[.]" In re Witkowski, 523 B.R. at 305. Here, per the stipulation with the Chapter 13 Trustee, App. at 131, and approved via an Order dated March 11, 2022, App. at 142 (hereinafter "Approved Stipulation"), after its parameters were clarified during the evidentiary hearing of even date, App. at 152, Debtor is already obligated to propose a plan that pays a 100% dividend on the allowed unsecured claims (except for a student loan claim, which is long-term, and will be paid outside the plan). The Approved Stipulation provides that the Debtor is to file this amended 100% plan within 30 days after the resolution of the US Trustee's Motion to Dismiss, App. at 131, the allowance of which gave rise to this appeal. The

22

allowed unsecured claims in this matter, aside from the long-term student loan, total approximately $24,000 (App. at 151-52, Trustee stating that $12,000 lump sum payment would cover 50% of claims other than the student loan).  This amount is significantly less than the $73,429.60 bank account balance available to fund the plan, stemming from the non-filing spouse's retirement account withdrawal (hereinafter "Retirement Withdrawal").  See Sch A/B, Line 17 (App. at 41); Trustee's Objection to Confirmation at ¶ 7 (App. at 89); Debtor's Trial Testimony (App. at 165), and the Bankruptcy Court's findings to the same effect (App. at 254).  Aside from the Retirement Withdrawal, the Debtor's non-filing spouse's wages (unrelated to cannabis) are also available to fund a plan.  App. at 59, 163-64, 259-60, 267.  Thus, unlike Arenas, in the instant case the entire cost of the 100% plan can be funded by non-filing spouse's wages or by contributing a portion of the Retirement Withdrawal to the plan.  No wages of the Debtor would be necessary to fund the 100% plan, therefore reliance on the Arenas reasoning is unavailing, and this Panel should reject it. Unlike Arenas, where there was no possibility of funding a plan with non-cannabis income, in the instant case all unsecured creditors with allowed claims would be paid in full (with the exception of the student loan to be paid outside the plan), and not a penny would need to be funded from any cannabis-derived

23

source.  With this approach, Debtor's place or type of employment is no longer relevant, and any good-faith analysis must take this into account.  Where 11 U.S.C. § 1307(c) provides that the decision whether to dismiss or convert must consider what "is in the best interests of creditors and the estate," so too in the instant matter a 100% divided – not dismissal – is in the best interest of creditors and the estate.

In addition, just as Arenas looked into the "ability to earn and likelihood of future increases in income," id. at 852, so too should the Bankruptcy Court in this matter have considered that the Debtor's employment in the cannabis field may well be temporary, and that changes are likely (if not guaranteed) to occur over the course of the 3-5 year plan, as they do in most Chapter 13 cases.  See In re Dunson, 550 B.R. 537, 549 (Bankr. D. Kan. 2016) ("[n]ationally, only 36 percent of Chapter 13 debtors complete their plans").

As one court noted, "a finding of lack of good faith should not [be] lightly infer[red]. … [W]e cautioned that dismissal should be confined carefully and utilized only in egregious cases that entail concealed or misrepresented assets and/or sources of income, lavish lifestyles, and intention to avoid a large single debt based upon conduct akin to fraud, misconduct or gross negligence." Perlin v. Hitachi Capital Am. Corp. (In re Perlin), 497 F.3d 364, 373 (3d Cir. 2007) (quoting Tamecki v.

24

Frank (In re Tamecki), 229 F.3d 205, 207, 208 (3d Cir. 2000))
(internal quotation marks omitted).

"[B]ankruptcy and district courts have reserved bad faith
dismissal for the truly egregious case, often involving
individuals with substantial means who have flaunted their
wealth, have continued their lavish lifestyles, and are engaging
in creative, elaborate schemes to conceal their assets and cheat
their creditors or to otherwise inflict harm on third parties."
In re Tamecki, 229 F.3d at 209 (Rendell, J., dissenting).

None of this is the case here.  The dismissal was in error and
must be reversed.

## II.    Dismissal under Section 105 for abuse of process was error, as there is no unconscionable scheme that prejudices the parties

The Bankruptcy Court further erred in holding that the Chapter
13 proceeding must also be dismissed for abuse of process under
11 U.S.C. § 105.  App. at 267-69.  "While the bankruptcy courts
have fashioned relief under section 105(a) in a variety of
situations, the powers granted by that statute may be exercised
only in a manner consistent with the provisions of the
Bankruptcy Code. That statute does not … constitute a roving
commission to do equity."  United States v. Sutton, 786 F.2d
1305, 1308 (5th Cir. 1986).

Just as good faith is not defined in the Bankruptcy Code,
neither is abuse of process.  "While 'abuse of process' under §

25

105(a) is not defined in the Bankruptcy Code, a few courts essentially define it as maneuvers or schemes which would have the effect of undermining the integrity of the bankruptcy system. … [B]ankruptcy courts have found that the filing of false documents – which disrupted the bankruptcy process and prejudiced debtors – constituted an abuse of process." Trevino v. HSBC Mortg. Servs. (In re Trevino), 615 B.R. 108, 128 (Bankr. S.D. Tex. 2020) (internal citations omitted).

However, the undersigned has not been able to locate a single case where the nature of the Debtor's employment resulted in dismissal under Section 105.  In holding that dismissal in the instant matter was warranted under Section 105, the Bankruptcy Court relied on In re Johnson, 532 B.R. 53 (Bankr. W.D. Mich. 2015), citing that "irrespective of any segregation of funds, the court and the Standing Trustee carrying out their respective statutory duties will inevitably support the Debtor's criminal enterprise." Id. at 57.  But Johnson went in a totally different direction by giving that debtor the opportunity to avoid dismissal by ceasing his cannabis business while remaining a debtor in Chapter 13.  Id. at 58.  Here, the Bankruptcy Court did not give the Debtor that chance.  More importantly, the Bankruptcy Court's reliance on Johnson to support dismissal under Section 105 is misplaced because Johnson is distinguishable in several other important aspects.  First, in

26

Johnson, that debtor was found to be "engaged in business" within the meaning of 11 U.S.C. § 1304, because his self-employment consisted of cultivating and selling marijuana plants grown in the basement of his residence. In re Johnson, 532 B.R. at 55, 57. Thus, Johnson's residence, truck, horticultural equipment, fertilizer, and other supplies were all property of the estate while still being used in operating his marijuana business, id. at 55, described by that court as a "criminal enterprise." Id. at 57. On the other hand, Mr. Blumsack in the instant case has no such enterprise. What he has is a job. Without any stake in his employer's operations or any ownership thereof, App. at 254, it cannot be said that remaining in a Chapter 13 would "support the Debtor's criminal enterprise" in the instant case. But despite Johnson's "financial life [being] inextricably bound up with his federal criminal activity[,]" id. at 57, the Johnson court nevertheless found that "***the Debtor filed his case in good faith***[.]" Id. at 59 (emphasis added). Here, despite the Debtor being a mere employee, and in the absence of any evidence that the Debtor's home or other property of the estate became tools of the questionable trade, the Bankruptcy Court found Mr. Blumsack to lack good faith in filing his Chapter 13 petition and plan. This was error.

The Bankruptcy Court also relied on In re Rent-Rite Super Kegs W. Ltd., 484 B.R. 799 (Bankr. D. Colo. 2012), App. at 268, where

that court held that where a Debtor's operations violated the
Controlled Substances Act, and "even if the Debtor is never
charged or prosecuted … a federal court cannot be asked to
enforce the protections of the Bankruptcy Code in aid of a
Debtor whose activities constitute a continuing federal crime."
Id. at 805.  On this point, the First Circuit in fact came to
the aid of a party whose activity constituted an ostensible
federal crime, in finding that Maine's restrictions on cannabis
business ownership were unconstitutional under the dormant
commerce clause despite the federal illegality of cannabis.  Ne.
Patients Grp. v. United Cannabis Patients & Caregivers of Me.,
45 F.4th 542 (1st Cir. 2022).  There, the First Circuit rejected
the proposition that a party "should not be able to receive a
constitutional remedy in federal court to protect the sale and
distribution of a controlled substance which remains illegal
under federal law."  Id. at 557.  This is a clear indication
that cannabis sales and distribution are not a bar to accessing
Federal Courts, which of course include the bankruptcy courts.

Of note, neither Johnson nor Rent-Rite Super Kegs W relied
on Section 105 to support dismissal.  The former, while finding
a way for its debtor to remain in Chapter 13 without dismissal,
refers to Section 105 in support of a bankruptcy court's general
ability to act sua sponte, In re Johnson, 532 B.R. at 54, while
the latter mentions Section 105 in discussing the court's

28

authority to deny a request to convert to another chapter.  In re Rent-Rite Super Kegs W. Ltd., 484 B.R. at 806-07 (citing Marrama v. Citizens Bank, 549 U.S. 365, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007)).

In the absence of some unconscionable scheme, e.g., filing of false documents resulting in prejudice to parties, In re Trevino, 615 B.R. at 128, dismissal of the instant matter under Section 105 was an error.

### III.    Denial of confirmation and denial of opportunity to file an amended plan was error

Aside from dismissal, the Bankruptcy Court also denied confirmation for lack of good faith under 11 U.S.C. § 1325(a)(3), App. at 265, and further denied an opportunity to file an amended plan, finding that such amendment would be "futile," which in itself served as a separate cause for dismissal under 11 U.S.C. § 1307(c)(5).  App. at 267.  However, "a Chapter 13 plan may be confirmed despite even the most egregious pre-filing conduct where other factors suggest that the plan nevertheless represents a good faith effort by the debtor to satisfy his creditors' claims." Neufeld v. Freeman, 794 F.2d 149, 153 (4th Cir. 1986).

a) <u>Lack of good faith finding under § 1325(a)(3) was</u>
<u>erroneous; the court looked to factors beyond the</u>
<u>manner of proposal of the plan</u>

"[C]ourts have articulated the following factors in analyzing
whether a Chapter 13 plan has been filed in good faith: (1) the
debtor's accuracy in stating her debts and expenses; (2) the
debtor's honesty in the bankruptcy process, including whether
she has attempted to mislead the court and whether she has made
any misrepresentations; (3) whether the Bankruptcy Code is being
unfairly manipulated; (4) the type of debt sought to be
discharged; (5) whether the debt would be dischargeable in a
Chapter 7; and (6) the debtor's motivation and sincerity in
seeking Chapter 13 relief." <u>Cabral v. Shamban (In re Cabral)</u>,
285 B.R. 563, 573 (B.A.P. 1st Cir. 2002).

In the instant case, the Bankruptcy Court failed to address
any of these factors, and instead found lack of good faith in
filing the plan under 11 U.S.C. § 1325(a)(3) solely because the
Debtor's employment is an activity that ostensibly violates
federal criminal law.  App. at 265.  This was error, as courts
have interpreted the identical language in 11 U.S.C. §
1129(a)(3)[3] to apply only to the steps taken in ***proposing*** the
plan or seeking confirmation, not its underlying terms.

---

[3] "Section 1325(a)(3) parrots the language in Section 1129(a)(3), and requires
the court to find that a proposed Chapter 13 plan 'has been proposed in good
faith and not by any means forbidden by law.' 11 U.S.C. § 1325(a)(3)." <u>In re</u>
<u>CWNevada LLC</u>, 602 B.R. at 731 n.33.

In <u>Irving Tanning Co. v. Me. Superintendent of Ins.</u>, 496 B.R.
644 (B.A.P. 1st Cir. 2013), the court rejected the argument that
the requirements of Section 1129(a)(3) apply to the contents of
a plan, beyond the manner of its proposal:

> Courts from time to time, without discussion, construe
> subsection (a)(3) to require conformity of the terms of
> the plan to applicable nonbankruptcy law, but we are
> aware of none that have expressly squared
> understanding with subsection (a)(3)'s express focus on
> the manner of the plan's proposal. The Appellees, whose
> gripe is with the substance of the Plan, have alleged no
> fault in the manner in which the Debtors have proposed
> it or attempted to obtain its confirmation.

<u>Irving Tanning Co. v. Me. Superintendent of Ins.</u>, 496 B.R. at
660.

The only circuit-level case addressing this issue in the
cannabis context, <u>Garvin v. Cook Invs. NW, SPNWY, LLC</u>, 922 F.3d
1031 (9th Cir. 2019), readily adopted First Circuit's <u>Irving
Tanning</u> interpretation:

> Like the First Circuit Bankruptcy Appellate Panel, we
> conclude that § 1129(a)(3) directs courts to look ***only
> to the proposal of a plan***, not the terms of the plan.
> <u>Irving Tanning Co. v. Me. Superintendent of Ins. (In re
> Irving Tanning Co.)</u>, 496 B.R. 644, 660 (B.A.P. 1st Cir.
> 2013). This reading accords with both the statutory
> text, which does not refer to the substance of the plan,
> and the weight of persuasive authority. See <u>In re Gen.
> Dev. Corp.</u>, 135 B.R. 1002, 1007 (Bankr. S.D. Fla. 1991)
> ("Courts addressing the issue have uniformly held that
> Section 1129(a)(3) does not require that the contents of
> a plan comply in all respects with the provisions of all
> nonbankruptcy laws and regulations." (internal quotation
> marks omitted)).

<u>Garvin v. Cook Invs. NW, SPNWY, LLC</u>, 922 F.3d at 1035
(emphasis added).

The Ninth Circuit in <u>Garvin</u> noted that courts that interpreted
§ 1129(a)(3) as a mandate to look to the terms of the plan have
"fail[ed] to 'square[] that understanding with subsection
(a)(3)'s express focus on the manner of the plan's ***proposal***.'"
<u>Id.</u> (quoting <u>Irving Tanning</u>, 496 B.R. at 660) (emphasis as in
original).

In short, "[the Ninth] Circuit specifically rejected the
notion that § 1129(a)(3) forecloses confirmation of a plan that
relies on income from criminal activity, as held by some
bankruptcy courts considering whether to dismiss a case based on
a debtor's involvement in the marijuana business.  The court
acknowledged that there may be consequences arising from a
debtor's connections with criminal activity, but denial of
confirmation under § 1129(a)(3) is not one of them."  <u>In re
Burton</u>, 610 B.R. at 637 n.8 (internal citations omitted).

In the instant case, the Bankruptcy Court found lack of good
faith under § 1325(a)(3).  But applying the <u>Garvin</u> analysis,
where the language of § 1325(a)(3) is identical to that of §
1129(a)(3), and because the Bankruptcy Court has made no
findings in the instant case that the Debtor engaged in bad
faith or illegality in the manner of ***proposing*** his plan, the

finding of lack of good faith and denial of confirmation under §

1325(a)(3) must be deemed an error and must be reversed.

### b) Denial of opportunity to propose a plan funded by sources unrelated to cannabis was error

The Bankruptcy Court did not grant the Debtor an opportunity

to file an amended plan funded by sources unrelated to cannabis,

holding that such amendment "would be futile."  App. at 267.

Other courts disagreed.  See In re McGinnis, 453 B.R. 770

(Bankr. D. Or. 2011) (court denied confirmation but permitted

the filing of an amended plan that relied on funding from non-

cannabis sources), In re Johnson, 532 B.R. 53 (debtor may remain

in bankruptcy if he ceased his marijuana business).  "The common

theme in all of these Chapter 13 cases is the willingness of the

bankruptcy court to allow the voluntary debtor to propose a

feasible plan that does not rely on income received through a

violation of the Controlled Substances Act."  In re CWNevada

LLC, 602 B.R. at 733.

In the instant case, as previously explained, see supra pp.

22-23, per the Approved Stipulation, App. at 131, 142, Debtor is

already obligated to propose a plan that pays a 100% dividend on

the allowed unsecured claims (except for a student loan claim,

which is long-term, and will be paid outside the plan).  The

Approved Stipulation provides that the Debtor is to file this

amended 100% plan within 30 days after the resolution of the

instant US Trustee Motion.  App. at 131.  This plan could be funded in full by a portion of the spouse's Retirement Withdrawal, which has no cannabis taint.  See supra at p. 23. Aside from the Retirement Withdrawal, the Debtor's spouse's wages (also unrelated to cannabis) are available to fund a plan. App. at 59, 163-64, 259-60, 267.  No wages of the Debtor would be necessary to fund this 100% plan via which all unsecured creditors with allowed claims would be paid in full (with the exception of the student loan to be paid outside the plan), and not a penny would need to be funded from any cannabis-derived source.  With this approach, Debtor's place or type of employment is no longer relevant, and a plan that pays 100% of all allowed unsecured claims (minus the student loan) should hardly be considered "futile."

Accordingly, the denial of an opportunity to propose an amended plan and the resulting finding of cause for dismissal under § 1307(c)(5) were errors, and this Panel should reverse the same.

## CONCLUSION

**WHEREFORE,** for reasons set forth in this Brief, Debtor requests that this Panel reverse the decision of the Bankruptcy Court, vacate the order of dismissal, and remand this matter to the Bankruptcy Court with instructions for further proceedings,

34

including directing the Bankruptcy Court to permit the Debtor to

propose an amended plan.


Respectfully submitted,
Scott H. Blumsack, Debtor / Appellant,
By his Attorney,
/s/ Dmitry Lev
Dmitry Lev BBO # 665236
Law Offices of D. Lev, PC
134 Main Street
Watertown, MA 02472
Tel: (617) 556-9990
dlev@levlaw.net

Dated:  May 5, 2023


## CERTIFICATE OF COMPLIANCE PURSUANT TO FED. R. BANKR. P. 8015(h)


It is hereby certified that the herein document complies with
the type-volume limitations as set forth in Fed. R. Bankr. P.
8015(a)(7)(B).  This document contains 8,284 words.

Respectfully submitted,
/s/ Dmitry Lev
Dmitry Lev BBO # 665236
Law Offices of D. Lev, PC
134 Main Street
Watertown, MA 02472
Tel: (617) 556-9990
dlev@levlaw.net

Dated:  May 5, 2023

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## FOR THE FIRST CIRCUIT

---

### BAP NO. MW 23-03

---

### Bankruptcy Case No. 21-40248-EDK

---

### SCOTT H. BLUMSACK,
**Debtor**

---

### SCOTT H. BLUMSACK
**Appellant,**

**v.**

### WILLIAM K. HARRINGTON, United States Trustee,
**Appellee.**

---

### On appeal from the United States Bankruptcy Court for the
### District of Massachusetts

---

### STATEMENT REGARDING RELATED CASES
### 1st Cir. BAP L.R. 8014-1(a)(2)

The undersigned certifies that the undersigned knows of no related cases or appeals as that term is defined in 1st Cir. BAP L.R. 8014-1(a)(2)(A).

/s/ Dmitry Lev
Dmitry Lev BBO # 665236
Law Offices of D. Lev, PC
134 Main Street
Watertown, MA 02472
Tel: (617) 556-9990
dlev@levlaw.net


Dated:  May 5, 2023

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# FOR THE FIRST CIRCUIT

---

### BAP NO. MW 23-03

---

### Bankruptcy Case No. 21-40248-EDK

---

### SCOTT H. BLUMSACK,
### Debtor

---

### SCOTT H. BLUMSACK
### Appellant,

### v.

### WILLIAM K. HARRINGTON, United States Trustee,
### Appellee.

---

### On appeal from the United States Bankruptcy Court for the
### District of Massachusetts

---

### STATEMENT REGARDING INTERESTED PARTIES
### 1st Cir. BAP L.R. 8014-1(a)(3)

The undersigned certifies that the undersigned knows of no interested party as that term is defined in 1st Cir. BAP L.R. 8014-1(a)(3)(A).

/s/ Dmitry Lev
Dmitry Lev BBO # 665236
Law Offices of D. Lev, PC
134 Main Street
Watertown, MA 02472
Tel: (617) 556-9990
dlev@levlaw.net

Dated:  May 5, 2023

**United States Bankruptcy Appellate Panel**
**FOR THE FIRST CIRCUIT**

---

**BAP NO. MW 23-03**

---

**Bankruptcy Case No. 21-40248-EDK**

---

**SCOTT H. BLUMSACK,**
**Debtor**

---

**SCOTT H. BLUMSACK**
**Appellant,**

**v.**

**WILLIAM K. HARRINGTON, United States Trustee,**
**Appellee.**

---

**On appeal from the United States Bankruptcy Court for the**
**District of Massachusetts**

---

**CERTIFICATE OF SERVICE**

I, Dmitry Lev, do hereby certify that on this 5th day of May, 2023, I electronically filed the foregoing Brief for Appellant and the separately filed Appendix in this matter with the Bankruptcy Appellate Panel for the First Circuit via its CM/ECF system. On information and belief, a Notice of Docket Activity was contemporaneously transmitted to the following BAP electronic filers:

- For the United States Trustee: Eric Kempton Bradford, Frederick Gaston Hall, Richard King, Steve Meunier
- For the Chapter 13 Trustee: David Mawhinney

Pursuant to United States Bankruptcy Appellate Panel for the First Circuit General Order No. 2, Rule 5(a), the "notice [of Docket Activity] constitutes service of the document on all parties who have registered as BAP electronic filers…"

Respectfully submitted,
/s/  Dmitry Lev__
Dmitry Lev, Esq., BBO # 665236
Law Offices of D. Lev, PC
134 Main Street
Watertown, MA 02472
(617) 556-9990 office
dlev@levlaw.net


Dated:  May 5, 2023