IN THE UNITED STATES BANKRUPTCY APPELLATE PANEL
FOR THE FIRST CIRCUIT

BAP No. MW 23-003

Bankruptcy Case No. 21-40248-EDK

In re SCOTT H. BLUMSACK, d/b/a Mass Athletics, LLC, Debtor.

SCOTT H. BLUMSACK, Appellant,

v.

WILLIAM K. HARRINGTON, United States Trustee, Appellee.

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

**BRIEF OF APPELLEE WILLIAM K. HARRINGTON,
UNITED STATES TRUSTEE**

RAMONA D. ELLIOTT
Deputy Director/General Counsel
P. MATTHEW SUTKO
Associate General Counsel
FREDERICK GASTON HALL
Trial Attorney

Department of Justice
Executive Office for
  United States Trustees
441 G Street, NW, Suite 6150
Washington, DC 20530
Tel.: (202) 307-1399
Fac.: (202) 307-2397
frederick.g.hall@usdoj.gov

WILLIAM K. HARRINGTON
United States Trustee for Region 1
RICHARD T. KING
Assistant United States Trustee
ERIC K. BRADFORD
STEPHEN E. MEUNIER
Trial Attorneys

Department of Justice
Office of the United States Trustee
446 Main Street, 14th Floor
Worcester, MA 01608
Tel.: (508) 793-0555
Fac.: (508) 793-0558
eric.k.bradford@usdoj.gov
stephen.meunier@usdoj.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

STATEMENT REGARDING ORAL ARGUMENT ................................................. vi

STATEMENT OF APPELLATE JURISDICTION ...................................................... 1

STATEMENT OF THE ISSUES ............................................................................ 1

STANDARD OF REVIEW .................................................................................... 2

STATEMENT OF THE CASE .............................................................................. 3

    I.    Statutory Framework ......................................................................... 3

        A.    Chapter 13 cases .................................................................... 3

        B.    Treatment of marijuana under federal law .............................. 4

        C.    The role of the United States Trustee ..................................... 5

    II.    Statement of the Facts ....................................................................... 6

        A.    Mr. Blumsack filed and pursued a chapter 13 petition while his sole income was from being paid to sell marijuana............................................. 6

        B.    The United States Trustee objected to the plan and moved to dismiss the case. ....................................................................... 7

        C.    The bankruptcy court sustained the United States Trustee's objection to the plan and granted his motion to dismiss. ................................................. 9

SUMMARY OF THE ARGUMENT ....................................................................... 12

ARGUMENT ................................................................................................... 14

    I.    The Bankruptcy Court's Finding of Bad Faith in Filing the Petition Is Not Clearly Erroneous; the Court Therefore Properly Denied Plan Confirmation Under Section 1325(a)(7) and Properly Exercised Its Discretion in Dismissing the Case Under Section 1307(c). ................................................................................. 14

    II.    The Bankruptcy Court Properly Denied Plan Confirmation Under Section 1325(a)(3) Because It Was Not Proposed in Good Faith. ............................... 20

    III.    The Bankruptcy Court Properly Exercised Its Discretion in Dismissing the Case Under Section 1307(c)(5) Because It Reasonably Denied Additional Time To Propose a Plan............................................................................... 23

CONCLUSION ................................................................................................ 26

CERTIFICATE OF COMPLIANCE

STATEMENT REGARDING RELATED CASES

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Agriprocessors, Inc.*,
   No. 08-02751 (Bankr. N.D. Iowa)................................................................ 16

*Arenas v. United States Trustee (In re Arenas)*,
   535 B.R. 845 (B.A.P. 10th Cir. 2015) ..............................................15, 19, 21

*Berliner v. Pappalardo (In re Puffer)*,
   674 F.3d 78 (1st Cir. 2012) ....................................................... 17, 20, 21, 22

*Brown v. Gore (In re Brown)*,
   742 F.3d 1309 (11th Cir. 2014) .................................................................... 2

*Cabral v. Shamban (In re Cabral)*,
   285 B.R. 563 (B.A.P. 1st Cir. 2002) ........................................................... 21

*In re CWNevada LLC*,
   602 B.R. 717 (Bankr. D. Nev. 2019) ....................................................15, 16

*In re Eldorado Canyon Props., LLC*,
   505 B.R. 601 (B.A.P. 1st Cir. 2014) ............................................................ 2

*Garvin v. Cook Investments NW, SPNWY, LLC*,
   922 F.3d 1031 (9th Cir. 2019) ..............................................................22, 23

*Gonzalez-Ruiz v. Doral Financial Corp. (In re Gonzalez-Ruiz)*,
   341 B.R. 371 (B.A.P. 1st Cir. 2006) ......................................................16, 17

*Grogan v. Garner*,
   498 U.S. 279 (1991) .................................................................................... 18

*In re Hacienda Co., LLC*,
   647 B.R. 748 (Bankr. C.D. Cal. 2023) ....................................................... 16

*Howard v. Lexington Invs., Inc.*,
   284 F.3d 320 (1st Cir. 2002) ....................................................................... 2

*Irving Tanning Co. v. Maine Superintendent of Insurance (In re Irving Tanning Co.)*,
    496 B.R. 644 (B.A.P. 1st Cir. 2013) ...................................................... 22, 23

*In re Johnson*,
    532 B.R. 53 (Bankr. W.D. Mich. 2015) .............................................. 25, 26

*In re Marrama*,
    430 F.3d 474 (1st Cir. 2005), *aff'd sub nom. Marrama v. Citizens Bank of Mass.*, 549 U.S. 365 (2007) ........................................................... 17

*In re McGinnis*,
    453 B.R. 770 (Bankr. D. Ore. 2011) ...................................................... 25

*Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*,
    898 F.2d 498 (6th Cir. 1990) .................................................................. 6

*Northeast Patients Group v. United Cannabis Patients & Caregivers of Maine*,
    45 F.4th 542 (1st Cir. 2022) .................................................................. 18

*Palmacci v. Umpierrez*,
    121 F.3d 781 (1st Cir. 1997) .................................................................. 2

*Ransom v. FIA Card Servs., N.A.*,
    562 U.S. 61 (2011) ................................................................................ 25

*Sharma v. Pappalardo (In re Sharma)*,
    647 B.R. 795 (B.A.P. 1st Cir. 2023) ...................................................... 1

*Sullivan v. Solimini (In re Sullivan)*,
    326 B.R. 204 (B.A.P. 1st Cir. 2005) ..............................................*passim*

**Statutes**

11 U.S.C.

§ 102(3) ................................................................................................ 4
§ 105(a) ................................................................................... 11, 12, 13
§ 307 .................................................................................................... 6
§ 1129(a)(3) ......................................................................................... 23
§§ 1301-1330 ........................................................................................ 3
§ 1302 ................................................................................................... 3
§ 1306(a)(2) .......................................................................................... 3
§ 1307 ............................................................................................ 1, 18
§ 1307(c) ....................................................................................... *passim*
§ 1307(c)(5) .................................................................................. *passim*
§ 1321 ................................................................................................... 3
§ 1322(a) ............................................................................................... 3
§ 1325 ..................................................................................... 4, 10, 18
§ 1325(a) .......................................................................................... 3, 8
§ 1325(a)(3) .................................................................................. *passim*
§ 1325(a)(7) .................................................................................. *passim*
§ 1326 ................................................................................................... 3
§ 1328(a) ............................................................................................... 3

18 U.S.C.

§ 2 ................................................................................................... 9, 10
§ 2(a) .................................................................................................... 5
§ 1956(a)(1) ......................................................................................... 15

21 U.S.C.

§ 841 .................................................................................................... 9
§ 841(a)(1) ............................................................................................ 5
§ 843(a)(6) ............................................................................................ 5
§ 844(a) ............................................................................................. 5, 9
§ 846 ............................................................................................. 5, 9, 10
§ 856 .................................................................................................... 9
§ 856(a)(2) ............................................................................................ 5

28 U.S.C.
  § 157(a) ................................................................................. 1
  § 157(b) ................................................................................. 1
  § 158(c)(1) ............................................................................. 1
  § 158(c)(2) ............................................................................. 1
  §§ 581-589 ............................................................................. 6
  § 1334(a) ............................................................................... 1

## Regulations and Rules

21 C.F.R.
  § 1308.11(d)(23) ..................................................................... 4
  § 1308.11(d)(58) ..................................................................... 4

1st Cir. BAP L.R. 8019-1(a) ........................................................ vi

Fed. R. Bankr. P.
  8002 ..................................................................................... 1
  8019(b)(3) ............................................................................. vi

## STATEMENT REGARDING ORAL ARGUMENT

The United States Trustee submits that oral argument is unnecessary and that this Court can decide the issues presented by this appeal based on the briefs. *See* Fed. R. Bankr. P. 8019(b)(3); 1st Cir. BAP L.R. 8019-1(a). Nonetheless, the United States Trustee stands ready to participate in oral argument if it would assist the Court.

## STATEMENT OF APPELLATE JURISDICTION

This Court has jurisdiction to hear this appeal of the bankruptcy court's final order under 28 U.S.C. § 158(b) and (c)(1). The bankruptcy court had jurisdiction over the debtor's chapter 13 bankruptcy case under 28 U.S.C. §§ 157(a), 157(b), and 1334(a). The bankruptcy court's final order dismissing the chapter 13 case under 11 U.S.C. § 1307, App. at 271,[1] was entered on January 17, 2023. *See, e.g., Sharma v. Pappalardo (In re Sharma)*, 647 B.R. 795, 804 (B.A.P. 1st Cir. 2023) ("An order dismissing a chapter 13 case is a final, appealable order.") (cleaned up). The bankruptcy court's interlocutory order denying confirmation of the chapter 13 plan merged with the final order. The debtor timely filed a notice of appeal under 28 U.S.C. § 158(c)(2) and Federal Rule of Bankruptcy Procedure 8002 on January 30, 2023. App. at 272-274.

## STATEMENT OF THE ISSUES

**I.**     Did the bankruptcy court properly deny confirmation of a chapter 13 plan under 11 U.S.C. § 1325(a)(7) and properly exercise its discretion in dismissing the case under 11 U.S.C. § 1307(c) because the petition was not filed in good faith where the debtor planned to fund his chapter 13 plan solely from income received for violating federal law?

---

[1] Citations to "App. at ___" are to the Record Appendix of Appellant, Scott H. Blumsack.

**II.**    Did the bankruptcy court properly deny confirmation of a chapter 13 plan under 11 U.S.C. § 1325(a)(3) because the plan was not proposed in good faith where the debtor's plan would be funded solely by income from violating federal law?

**III.**    Did the bankruptcy court properly exercise its discretion in dismissing the debtor's bankruptcy petition under 11 U.S.C. § 1307(c)(5) because confirmation of a plan and a request for additional time to propose a plan were denied?

## STANDARD OF REVIEW

The bankruptcy court's conclusions of law are reviewed de novo and its findings of fact are reviewed for clear error. *Palmacci v. Umpierrez*, 121 F.3d 781, 785 (1st Cir. 1997).

The bankruptcy court's order dismissing the case is reviewed for abuse of discretion. *See Howard v. Lexington Invs., Inc.*, 284 F.3d 320, 322 (1st Cir. 2002); *In re Eldorado Canyon Props., LLC*, 505 B.R. 601, 603 (B.A.P. 1st Cir. 2014). "A bankruptcy court abuses its discretion if it ignores a material factor deserving of significant weight, relies upon an improper factor or makes a serious mistake in weighing proper factors." *Howard*, 284 F.3d at 323.

The bankruptcy court's findings that the petition was not filed in good faith and that the plan was not proposed in good faith are reviewed for clear error. *See Sullivan v. Solimini (In re Sullivan)*, 326 B.R. 204, 210 (B.A.P. 1st Cir. 2005); *Brown v. Gore (In re Brown)*, 742 F.3d 1309, 1315 (11th Cir. 2014). "[A factual] finding is clearly erroneous when although there is evidence to support it, the reviewing court on the

2

entire evidence is left with the definite and firm conviction that a mistake has been committed." *Sullivan*, 326 B.R. at 210.

## STATEMENT OF THE CASE

### I.    Statutory Framework

#### A.    Chapter 13 cases

Chapter 13 of the Bankruptcy Code permits an individual debtor with regular income to obtain a discharge of his debts if he pays creditors in accordance with a court-confirmed plan. *See* 11 U.S.C. §§ 1301-1330. A private trustee is appointed by the United States Trustee to oversee the chapter 13 debtor. *See id.* § 1302. The chapter 13 trustee receives periodic payments from the debtor, which the chapter 13 trustee then distributes to the debtor's creditors in satisfaction of the repayment plan. *See id.* § 1326. The debtor's "earnings from services performed . . . after the commencement of the case" are part of the property of the bankruptcy estate. *See id.* § 1306(a)(2). After making all required payments under the plan, the debtor generally receives a discharge of his debts. *See id.* § 1328(a).

A debtor seeking chapter 13 relief must propose a repayment plan, which must (among other things) set out how the debtor's disposable income will be used to repay creditors. *See id.* §§ 1321 & 1322(a). The bankruptcy court "shall confirm a plan if" the requirements of 11 U.S.C. § 1325(a) are satisfied. For purposes of this appeal, two of those requirements are relevant: "the plan has been proposed in good faith and

not by any means forbidden by law," *id.* § 1325(a)(3), and "the action of the debtor in filing the [bankruptcy] petition was in good faith," *id.* § 1325(a)(7).

Additionally, the Bankruptcy Code provides that "on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause." *Id.* § 1307(c). "Cause" is not defined in the Bankruptcy Code, but "it is well established that lack of good faith (or bad faith) is 'cause' for dismissal or conversion of a Chapter 13 case under § 1307(c)." *Sullivan*, 326 B.R. at 211. Additionally, section 1307(c) "includ[es]" a non-exhaustive list of examples of "cause." *See* 11 U.S.C. § 102(3) ("In this title . . . 'includes' and 'including' are not limiting."). For purposes of this appeal, one such example of "cause" is relevant: "denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan." *Id.* § 1307(c)(5).

### B.    Treatment of marijuana under federal law

Marijuana or cannabis is a Schedule I controlled substance under the federal Controlled Substances Act. *See* 21 C.F.R. § 1308.11(d)(23) & (58). The Controlled Substances Act prohibits many actions related to the manufacture and sale of marijuana, such as:

4

- "[I]t shall be unlawful for any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1).

- "It shall be unlawful for any person knowingly or intentionally . . . to possess . . . any equipment . . . which may be used to manufacture a controlled substance . . . knowing, intending, or having reasonable cause to believe, that it will be used to manufacture a controlled substance." *Id.* § 843(a)(6).

- "It shall be unlawful for any person knowingly or intentionally to possess a controlled substance unless such substance was obtained directly, or pursuant to a valid prescription or order, from a practitioner." *Id.* § 844(a).

- "[I]t shall be unlawful to . . . manage or control any place . . . either as an owner, lessee, agent, employee, occupant, or mortgagee, and knowingly and intentionally rent, lease, profit from, or make available for use, with or without compensation, the place for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance." *Id.* § 856(a)(2).

So, it is illegal under federal law to manufacture or sell marijuana. It also is illegal to possess marijuana with intent to sell it or without a valid prescription. It is illegal under federal law to possess marijuana manufacturing equipment knowing it will be used to manufacture marijuana. And it is illegal under federal law to manage a shop knowing and intending that it will be used to manufacture, store, and sell marijuana. Anyone who aids, abets, or conspires with someone to do any these things also has violated the Controlled Substances Act. *See* 18 U.S.C. § 2(a); 21 U.S.C. § 846.

## C.    The role of the United States Trustee

The United States Trustee is an official of the Department of Justice appointed by the Attorney General to supervise the administration of bankruptcy cases. *See*

*generally* 28 U.S.C. §§ 581-589.  United States Trustees are "watchdog[s]" "responsible for protecting the public interest and ensuring that bankruptcy cases are conducted according to law." *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990).  To this end, Congress has provided that the United States Trustee "may raise and may appear and be heard on any issue in any [bankruptcy] case or proceeding."  11 U.S.C. § 307.

## II.    Statement of the Facts

### A.    Mr. Blumsack filed and pursued a chapter 13 petition while his sole income was from being paid to sell marijuana.

Scott Blumsack filed a chapter 13 petition on April 1, 2021.  App. at 25-35.  On his Schedule I, Mr. Blumsack listed his employment as "Sales" at "Green Star Herbal."  App. at 59.  Green Star Herbal is a retail dispensary of marijuana, and Mr. Blumsack was a part-time "budtender" there.  App. at 136 ¶¶ d(3)-(4).

A few months later, in July 2021, Mr. Blumsack started a part-time job with TYCA Green, Inc. d/b/a Society Cannabis Co.  App. at 136 at ¶ d(8).  TYCA Green is a retailer, wholesaler, and producer of marijuana products.  App. at 136 ¶ d(9).  TYCA Green procures raw marijuana from others to manufacture its own products in house, including vaporizer cartridges, edibles, and pre-rolled smokable products.  App. at 136 ¶ d(10).

In the beginning of September 2021, Mr. Blumsack became a full-time employee with TYCA Green, and by December 2021, he became the general manager

of its facility in Clinton, Massachusetts.  App. at 136-137 ¶¶ d(12)-(13).  Far from a "mere employee," he was one of the three most senior figures in the business and supervised all 16 other employees.  App. at 137 ¶ d(15)-(16).  Mr. Blumsack is involved in all TYCA Green's business sectors, including retail, wholesale, production, marketing, and human resources.  App. at 137 ¶ d(14).  Mr. Blumsack set up TYCA Green's retail operation and continued to manage all aspects of the retail operation.  App. at 137 ¶ d(17).  He was licensed to sell marijuana products under Massachusetts law and often covered retail shifts for the business.  App. at 137 ¶ d(18).

TYCA Green paid Mr. Blumsack $75,000 per year for managing its marijuana business.  App. at 137 ¶ d(22).  He had no other income.  His spouse, who has not sought bankruptcy protection, is an employee of the Department of Defense and earns more than $100,000 per year.  App. at 163:14-164:3.  In late 2020, his spouse transferred over $70,000 from her retirement account into a joint bank account.  App. at 40-41; App. at 165:2-166:3.  In March 2022, Mr. Blumsack did not know how much of that money was still available for them to use.  App. at 166:8-18.  Mr. Blumsack and his spouse commingled their funds in their bank accounts, which they used to pay their living expenses.  App. at 168:10-14; App. at 169:16-20.

## B.  The United States Trustee objected to the plan and moved to dismiss the case.

Shortly after filing his chapter 13 case, Mr. Blumsack proposed a repayment plan using income from selling marijuana.  App. at 77-87.  The United States Trustee

objected to the proposed plan under section 1325(a) and moved to dismiss the case under section 1307(c) on the grounds that Mr. Blumsack's plan would be funded by activities illegal under federal law and would require the chapter 13 trustee to handle illegally obtained funds.  App. at 97-113.

Two creditors and the chapter 13 trustee also objected to the proposed plan. App. at 6 (Dkt. 25) & 8 (Dkts. 37 & 44).  However, their objections were resolved. App. at 15 (Dkts. 110 & 115) & 16-17 (Dkts. 131 & 132); App. at 131-34.  As part of the resolution of the chapter 13 trustee's objection, Mr. Blumsack agreed to pay $12,000 to the chapter 13 trustee for distribution to unsecured creditors and to submit, after resolution of the United States Trustee's motion to dismiss, an amended plan which would exclude his student loan debt from the plan and would pay the remaining unsecured claims in full.  App. at 131.

The United States Trustee's motion to dismiss and objection to the plan were not resolved.  Mr. Blumsack objected to the motion to dismiss, arguing that he was only an employee of the marijuana business and in all events his plan could be funded by his spouse's income and assets instead of his own.  App. at 114-126.

The bankruptcy court held a hearing on the United States Trustee's motion to dismiss and his objection to the plan.  App. at 147.  Before the hearing, the United States Trustee and Mr. Blumsack agreed on a set of stipulated facts, App at 136-37 ¶¶ d(1)-(22), and Mr. Blumsack testified at the hearing, App. at 163:4-171:23.  *See also* App. at 143-46 (hearing exhibits)  The bankruptcy court also received post-hearing

8

briefs.  App. at 190-227 (United States Trustee's post-hearing brief); App. at 228-51

(Mr. Blumsack's post-hearing brief).

> ### C.  The bankruptcy court sustained the United States Trustee's objection to the plan and granted his motion to dismiss.

On January 17, 2023, the bankruptcy court issued a memorandum decision,

App. at 252-270, and order, App. at 271, sustaining the United States Trustee's

objection to the proposed plan and granting his motion to dismiss Mr. Blumsack's

case.  The court concluded that, at the time Mr. Blumsack filed his bankruptcy

petition, his job of selling cannabis at Green Star Herbal constituted (i) distribution

and possession with intent to distribute a controlled substance in violation of 21

U.S.C. § 841; (ii) possession of a controlled substance without a prescription in

violation of 21 U.S.C. § 844(a); (iii) aiding and abetting Green Star Herbal in violating

21 U.S.C. §§ 841 and 844(a), all in violation of 18 U.S.C. § 2; and (iv) conspiracy to

distribute and to possess with intent to distribute a controlled substance in violation

of 21 U.S.C. § 846.  App. at 262.  The court also found that Mr. Blumsack's

subsequent employment at TYCA Green "include[d] manufacturing, distributing, or

dispensing a controlled substance or possession a controlled substance with intent to

manufacture, distribute or dispense in violation of 21 U.S.C. § 841."  App. at 263.  It

found that Mr. Blumsack also managed a facility for manufacturing, storing,

distributing, or using a controlled substance in violation of 21 U.S.C. § 856.  App. at

263.  Finally, the court concluded that Mr. Blumsack, through his duties as general

manager, aided, abetted, and conspired to commit TYCA Green's violations of the
Controlled Substances Act in violation of 18 U.S.C. § 2 and 21 U.S.C. § 846. App. at
263.[2]

Having determined that Mr. Blumsack was actively engaged in marijuana sales
when he filed for chapter 13 relief and continuously did so throughout the case, the
court turned to whether his repayment plan could be confirmed under section 1325.
The court concluded that Mr. Blumsack's plan could not be confirmed because Mr.
Blumsack did not propose the plan in good faith and because he did not file his
petition in good faith. *See* 11 U.S.C. § 1325(a)(3) & (7). App. at 264-265. The court
held that Mr. Blumsack "filed this voluntary Chapter 13 case while engaging in
activities in the course of his employment that violate federal criminal laws and, in his
new employment, . . . his actions continue to violate federal criminal laws." App. at
265. And the court held that the proposed plan "is to be funded by the wages derived
from those illegal activities, which would require the Chapter 13 trustee to knowingly
administer wages derived from an active participant in a criminal enterprise." App. at
265. Thus, the court could not find good faith either in the filing of the petition or in
the proposing of the plan "since, from the inception of this case, [Mr. Blumsack] has

---

[2] Mr. Blumsack never seriously contended that his actions did not violate the
Controlled Substances Act. Instead, he argued that he was "a mere employee," App.
at 117, that the United States Trustee's position would deny bankruptcy relief to
"entities that derive economic benefit from the proceeds and profits of the marijuana
industry," App. at 118-19, and that the United States Trustee's position was in tension
with other governmental actions, App. at 243-45.

engaged in and benefited from, and intends to continue [to] engage in and benefit from, activities that violate federal criminal law." App. at 265.

The court next determined whether to dismiss the case under section 1307(c). The court concluded that Mr. Blumsack's lack of good faith in filing the case was "cause" under section 1307(c). App. at 266. The court also found "cause" under section 1307(c)(5) because it had denied confirmation of Mr. Blumsack's plan. App. at 266-267. The court considered Mr. Blumsack's argument that he could "propose a plan that is funded solely by the wages from [Mr. Blumsack's] spouse (which are not derived from engagement in federal crimes)." App. at 267. But the court decided not to allow additional time to file a modified plan because it "would be futile." App. at 267. Mr. Blumsack "d[id] not suggest that he will cease engaging in activities that violate federal criminal laws," and the court found that Mr. Blumsack "objectively lack[ed] good faith in seeking the benefits and protections of federal bankruptcy laws while continuously and contemporaneously undertaking (and earning income from) actions that violate federal criminal laws." App. at 267. Having found "cause" under section 1307(c) and observing that no party had requested conversion of the case to chapter 7, the court decided that dismissal was the appropriate remedy. App. at 267.

The bankruptcy court also sua sponte observed that under 11 U.S.C. § 105(a) it has "broad equitable power" to "prevent an abuse of process." App. at 267-268. The court concluded that "it would be an abuse of process to permit [Mr. Blumsack] to obtain the protections and benefits of the federal bankruptcy laws while continuing to

commit federal crimes" regardless of how he funded his plan and, therefore, dismissal was warranted under section 105(a).  App. at 268-269.

Mr. Blumsack timely appealed the bankruptcy court's order.  App. at 272-274.

## SUMMARY OF THE ARGUMENT

I.    When Mr. Blumsack filed his bankruptcy petition, he derived all his income from selling marijuana in violation of federal law.  His bankruptcy filing contemplated using income from that illegal practice to fund his plan, which would have required the chapter 13 trustee to receive, hold, and transfer moneys from criminal violations. The bankruptcy court did not clearly err by concluding this constituted bad faith in filing the petition and, accordingly, properly denied confirmation of the proposed plan under section 1325(a)(7) and properly exercised its discretion in dismissing the case under section 1307(c).  Mr. Blumsack mistakenly argues his conduct is not so bad and that other bad actors receive bankruptcy discharges, but the court followed the Bankruptcy Code and relevant precedents in this case.  Moreover, contrary to Mr. Blumsack's claims, the court was not required to address specific factors, because under First Circuit precedent bad faith is determined on a case-by-case basis.

II.    Mr. Blumsack's proposed plan involved using income from his job selling marijuana to fund his plan.  The bankruptcy court did not clearly err in concluding this plan was not proposed in good faith, and accordingly properly denied confirmation of the plan under section 1325(a)(3).  The First Circuit does not require that the bankruptcy court consider any specific set of factors in finding bad faith

12

under section 1325(a)(3).  And contrary to Mr. Blumsack's citation to decisions involving other language, section 1325(a)(3)'s good-faith requirement is not limited to the means by which a plan is proposed, but rather refers to the proposal of the plan as a whole.

**III.**    The bankruptcy court properly exercised its discretion in denying additional time to propose another plan and therefore in dismissing the case under section 1307(c)(5) because Mr. Blumsack's proposal for his spouse's assets and paycheck to fund his plan still permitted him to profit from illegal marijuana sales while receiving the Bankruptcy Code's protections.  His arguments to the contrary ignore (a) that he and his spouse commingled their assets, preventing them from being considered unrelated to marijuana sales, and (b) that money is fungible, such that whatever his spouse contributes to the plan frees up an equal amount of his own income from marijuana sales to support their shared expenses.[3]

---

[3] The United States Trustee did not move to dismiss under section 105(a) and, accordingly, does not believe it is necessary to affirm the bankruptcy court's order.

13

## ARGUMENT

I.    **The Bankruptcy Court's Finding of Bad Faith in Filing the Petition Is Not Clearly Erroneous; the Court Therefore Properly Denied Plan Confirmation Under Section 1325(a)(7) and Properly Exercised Its Discretion in Dismissing the Case Under Section 1307(c).**

It is accepted that a lack of good faith in filing a bankruptcy petition is cause both to deny confirmation of the debtor's chapter 13 plan *and* to dismiss the petition outright.[4]  *See* 11 U.S.C. § 1325(a)(7); *Sullivan*, 326 B.R. at 211.  And the bankruptcy court's finding of bad faith is reviewed for clear error.  *Id.* at 210.  Here, not only is there some evidence to support the bankruptcy court's bad-faith finding, but the evidence also overwhelmingly supports it.

This Court has adopted a totality of the circumstances test for determining whether a chapter 13 petition is filed in good faith.  *See id.* at 211.  It requires "a multi-faceted analysis that is applied on a case-by-case basis."  *Id.*  "The hallmark of the totality of the circumstances test is that the factors to be considered may vary in each case."  *Id.* at 212.  The inquiry is an objective one, not subjective, meaning Mr. Blumsack himself may have had good intentions in filing his petition and yet it was still a bad-faith filing.  *Id.*

The bankruptcy court, having reviewed the parties' stipulated facts and Mr. Blumsack's testimony at a hearing, found that Mr. Blumsack filed his petition in bad faith because he filed it "while engaging in activities in the course of his employment

---

[4] Issue I is an independent and sufficient basis to affirm the order below.

that violate federal criminal laws." App. at 265.  In short, Mr. Blumsack sought to

benefit from one set of federal laws, the Bankruptcy Code, by using income from

violations of a different set of federal laws, the Controlled Substances Act.  He

planned to give this income from illicit sales to the chapter 13 trustee to pay his

creditors to receive a discharge.  But a chapter 13 trustee should not be placed in legal

jeopardy by being asked to administer such moneys.  *See*, *e.g.*, 18 U.S.C. § 1956(a)(1)

(prohibiting certain transactions when the person "know[s] that the property involved

in a financial transaction represents the proceeds of some form of unlawful activity");

*Arenas v. United States Trustee (In re Arenas)*, 535 B.R. 845, 852, 854 (B.A.P. 10th Cir.

2015).

　　Based on these facts, it was not clearly erroneous for the bankruptcy court to

decide his petition was not filed in good faith.  Mr. Blumsack raises a number of

arguments in response, but notably he does not contest the bankruptcy court's

specific findings detailing how, at the time the petition was filed, Mr. Blumsack was

violating federal law or that the chapter 13 trustee would have "to knowingly

administer wages derived from an active participant in a criminal enterprise." App. at

265.  Accordingly, the bankruptcy court's order should be affirmed.

　　What challenges Mr. Blumsack does raise are all meritless.  *First*, Mr. Blumsack

argues (at 15-19) that some bankruptcies involve criminal violations but are not

dismissed.  However, the cited precedents undermine his case.  In *In re CWNevada*

*LLC*, 602 B.R. 717 (Bankr. D. Nev. 2019), the court ultimately dismissed the debtor's

bankruptcy petition because all the parties in the case had unclean hands due to violations of the Controlled Substances Act. *See id.* at 746-47. And in *In re Hacienda Co., LLC*, 647 B.R. 748 (Bankr. C.D. Cal. 2023), the court held that the United States Trustee "ha[d] not established any ongoing violation of the [Controlled Substances Act] by [the] Debtor," and noted that, on a fuller record, dismissal might be appropriate. *Id.* at 752-54 & n.3. Here, the bankruptcy court did find violations of the Controlled Substances Act, something Mr. Blumsack does not deny. Moreover, the court in *Hacienda Co.* stated that "[o]ngoing postpetition violations are far more problematic than prepetition violations." *Id.* at 752. Mr. Blumsack's violations were pre- and post-petition. And Mr. Blumsack's citation (at 17-19) to the *In re Agriprocessors, Inc.*, bankruptcy misses the mark where he cites no evidence showing the criminal violations continued post-petition. Thus, even Mr. Blumsack's decisions do not support reversing the bankruptcy court's fact-based bad-faith finding.

*Second*, Mr. Blumsack argues (at 19-20) that the bankruptcy court erred by not addressing the factors mentioned by this Court in *Gonzalez-Ruiz v. Doral Financial Corp. (In re Gonzalez-Ruiz)*, 341 B.R. 371, 383 (B.A.P. 1st Cir. 2006). However, tellingly, Mr. Blumsack cites no precedent saying those factors *must* be considered. This is because, as the bankruptcy court noted, "in determining whether good faith (or lack thereof) has been established, 'the hallmark of the totality of the circumstances test is that the factors to be considered may vary in each case.'" App. at 264-65 (quoting *Sullivan*, 326 B.R. at 212) (cleaned up). Indeed, even in *Gonzalez-Ruiz*, the list of factors is

preceded by the statement that "bankruptcy courts *generally* consider" them, 341 B.R. at 383 (emphasis added), not that they must. The First Circuit, in describing review of a good-faith finding, stated that "'good faith' is a fact-intensive determination to be made on a case-by-case basis," and then listed factors a court "*may* consider." *In re Marrama*, 430 F.3d 474, 482 (1st Cir. 2005) (emphasis added), *aff'd sub nom. Marrama v. Citizens Bank of Mass.*, 549 U.S. 365 (2007). And in construing the requirement that plans be proposed in good faith, the First Circuit has said, "The totality of the circumstances test cannot be reduced to a mechanical checklist. . . . In all events, good faith is a concept, not a construct." *Berliner v. Pappalardo (In re Puffer)*, 674 F.3d 78, 82 (1st Cir. 2012). The bankruptcy court here made case-specific findings, and that is all that was required.

*Third*, Mr. Blumsack argues (at 20-21 & 24-25) that dismissal for bad faith is too draconian a remedy for his conduct. This argument parallels his claim (at 6) that this case raises the issue "whether an employee of a state-authorized cannabis retailer is ineligible for bankruptcy relief solely due to the nature of his employment." Mr. Blumsack vastly overstates this case. The bankruptcy court did not rule that, because Mr. Blumsack was employed at a dispensary, he was categorically ineligible for bankruptcy relief. Rather, having received a motion to dismiss from the United States Trustee, the court reviewed Mr. Blumsack's job responsibilities and compared them against the prohibitions of the Controlled Substances Act. Moreover, the court considered the specific type of relief Mr. Blumsack applied for and how chapter 13

cases operate. Based on all these considerations, the bankruptcy court found Mr. Blumsack's objective bad faith in filing this specific petition. And then the court considered the operation of sections 1307 and 1325, ultimately deciding to dismiss the case. At no point did the court find dispensary employees categorically ineligible for all bankruptcy relief. Rather, the court followed the procedures required by the Bankruptcy Code and the relevant court precedents. Mr. Blumsack may feel the outcome is draconian, but that does not mean the outcome is improper.

Elsewhere in his brief, Mr. Blumsack argues (at 28) that the First Circuit in *Northeast Patients Group v. United Cannabis Patients & Caregivers of Maine*, 45 F.4th 542 (1st Cir. 2022), "clear[ly] indicat[ed] that cannabis sales and distribution are not a bar to accessing Federal Courts, which of course include the bankruptcy courts." But the First Circuit in *Northeast Patients Group* was deciding whether there was unconstitutional discrimination in violation of the dormant Commerce Clause. Having found such a violation, the court found it would not be "equitable for [the court] to leave a dormant Commerce Clause violation unremedied." 45 F.4th at 557. But Mr. Blumsack has no right to bankruptcy relief. *See Grogan v. Garner*, 498 U.S. 279, 286 (1991) ("We have previously held that a debtor has no constitutional or 'fundamental' right to a discharge in bankruptcy."). Providing a remedy for unconstitutional discrimination is a far cry from requiring federal courts to bestow a privilege on Mr. Blumsack. The bankruptcy court therefore could permissibly

withhold the privilege of bankruptcy relief from someone who violated federal law throughout his bankruptcy case.

*Finally*, comparing his own case to the *Arenas* decision, Mr. Blumsack argues (at 21-24) that he could have funded a plan using non-marijuana assets and that he might have obtained another job outside of the marijuana field. The simple answer is he may refile if he does get another job. Regardless, Mr. Blumsack ignores that the relevant inquiry is whether he filed his petition in good faith. *Sullivan*, 326 B.R. at 211. And at the time he filed the petition, he was employed in a marijuana dispensary selling marijuana to customers. App. at 59; App. at 136 ¶¶ d(3)-(4). Moreover, although he now argues that his spouse's assets could support a chapter 13 plan, at the time he filed the petition Mr. Blumsack argued below that his spouse's assets were not part of the bankruptcy estate. App. 40-41 (asserting that a joint bank account with $73,429.60 "do[es] not belong to the Debtor" except for $85.17 because the remainder came from his spouse's retirement account). If Mr. Blumsack did not treat the money as part of his estate when the petition was filed, it cannot be included in the good-faith analysis. These factors may be relevant to other issues, *see infra* section III, but they are not relevant to good faith at the filing of the petition.

The bankruptcy court's finding of bad faith in the filing of the petition is not clearly erroneous, and accordingly the bankruptcy court properly denied confirmation of the proposed plan under section 1325(a)(7) and properly exercised its discretion in dismissing the case under section 1307(c).

II.    **The Bankruptcy Court Properly Denied Plan Confirmation Under Section 1325(a)(3) Because It Was Not Proposed in Good Faith.**

Denying confirmation of the proposed plan was appropriate for the independent reason that the plan was not proposed in good faith.[5]  The bankruptcy court must confirm a plan if, among other things, "the plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3).  Section 1325(a)(3) thus has two halves:  the plan must be proposed in good faith, and the plan must be proposed not by any means forbidden by law.  The bankruptcy court here relied only on the "good faith" half of section 1325(a)(3).  App. at 265 n.6.

"[T]he debtor must file the Chapter 13 plan in good faith," and it is the debtor's burden to show it was proposed in good faith.  *Sullivan*, 326 B.R. at 211.  There is no set of required factors for the court to consider.  *See Puffer*, 674 F.3d at 82.  In *Puffer*, the First Circuit clarified that the question whether a plan is proposed in good faith is the same as whether the plan was presented to the court or filed in good faith.  *See id.* at 83 ("In the case at hand, the bankruptcy court did not consider the totality of the circumstances when measuring whether the debtor's Chapter 13 plan was presented in good faith.  Instead, it mistakenly concluded that fee-only Chapter 13 plans are per se filed in bad faith.").

Here, the bankruptcy court's finding that Mr. Blumsack's plan was proposed in bad faith is not clearly erroneous.  Similar to the court's finding with respect to good

---

[5] Issues II and III together are a sufficient basis to affirm the order below.

faith in the filing of the petition, the court concluded that the plan was not proposed in good faith because Mr. Blumsack was presently violating the law in his then-current employment, the "plan as currently proposed is to be funded by the wages derived from those illegal activities," and the chapter 13 trustee would have "to knowingly administer wages derived from an active participant in a criminal enterprise."  App. at 265.  As before, Mr. Blumsack does not challenge those factual findings, and so the court's order should be affirmed.  *See Arenas*, 535 B.R. at 852-53, 854.

Mr. Blumsack makes only two arguments to challenge the bankruptcy court's finding of bad faith, but neither has merit.  *First*, Mr. Blumsack argues (at 30) that the court did not address enumerated factors from this Court's decision in *Cabral v. Shamban (In re Cabral)*, 285 B.R. 563, 573 (B.A.P. 1st Cir. 2002).  However, the First Circuit subsequently clarified in *Puffer* that there are no specific criteria a court must consider in deciding whether a plan has been proposed in good faith.  674 F.3d at 82 ("The totality of the circumstances test cannot be reduced to a mechanical checklist.").  The bankruptcy court's careful review of the facts and circumstances of the case is all that is required.

*Second*, Mr. Blumsack argues (at 30-32) that when section 1325(a)(3) requires that "the plan has been proposed in good faith," it refers "only to the steps taken in ***proposing*** the plan or seeking confirmation."  (Emphasis in original.)  But the First Circuit in *Puffer* has already interpreted the meaning of section 1325(a)(3)'s requirement that "the plan has been proposed in good faith."  It concluded that

section 1325(a)(3)'s good-faith test involves a substantive review of the contents of the plan. *See* 674 F.3d at 82-83. The court was deciding if fee-only chapter 13 plans are per se submitted in bad faith because they "leave the vast majority of debts unsatisfied" and "may be vulnerable to abuse by attorneys." *Id.* The court concluded that it would not "endors[e] a blanket rule that fee-only Chapter 13 plans are per se submitted in bad faith." *Id.* at 83. However, the court also noted that such fee-only plans are permitted only in "special circumstances" that would need to be evaluated on a "case-by-case" basis. *Id.* These special circumstances go beyond the simple question whether the steps taken in proposing the plan were in good faith. They include an inquiry into the needs and circumstances of the debtor. *Id.*

Mr. Blumsack's citation to decisions involving section 1325(a)(3)'s second half—"not by any means forbidden by law"—thus ignores that the First Circuit has already ruled on section 1325(a)(3)'s good-faith requirement. But the decisions he cites also do not support him. The decisions on which Mr. Blumsack relies—this Court's decision in *Irving Tanning Co. v. Maine Superintendent of Insurance (In re Irving Tanning Co.)*, 496 B.R. 644 (B.A.P. 1st Cir. 2013), and the Ninth Circuit's decision in *Garvin v. Cook Investments NW, SPNWY, LLC*, 922 F.3d 1031 (9th Cir. 2019)—are wrongly decided. But even if they were correct, their analysis of the second half of section 1325(a)(3) does not translate to the first half.

Neither *Irving Tanning Co.* nor *Cook Investments* interprets section 1325(a)(3)'s good-faith requirement. Both decisions focus on the meaning of the phrase, "the

plan has been proposed . . . not by any means forbidden by law."[6]  They concluded that this language requires that the *means* of proposing the plan must not have violated any law.  *See Irving Tanning Co.*, 496 B.R. at 660; *Cook Invs.*, 922 F.3d at 1035.  Section 1325(a)(3)'s good-faith requirement—"the plan has been proposed in good faith"— does not include the word "means" that was so important to those decisions.  Rather, the entire proposal must be in good faith.  Thus, the textual analysis this Court and the Ninth Circuit followed in *Irving Tanning* and *Cook Investments* does not apply to the good-faith requirement.

Because the court's finding that the plan was not proposed in good faith was not clearly erroneous, the court properly denied confirmation of the plan under section 1325(a)(3).

## III.   The Bankruptcy Court Properly Exercised Its Discretion in Dismissing the Case Under Section 1307(c)(5) Because It Reasonably Denied Additional Time To Propose a Plan.

Because the court properly denied confirmation of the proposed plan under both subsections 1325(a)(3), cause to dismiss the entire case independently existed if the court properly denied Mr. Blumsack additional time to propose another plan.[7]  *See* 11 U.S.C. § 1307(c)(5).  Mr. Blumsack wanted additional time to propose a plan that he claimed would not be based on income from his work selling marijuana.  App. at

---

[6] Both decisions concern chapter 11's provision on plan confirmation, section 1129(a)(3).  The texts of sections 1129(a)(3) and 1325(a)(3) are substantially the same.

[7] Issues II and III together are a sufficient basis to affirm the order below.

245-50.  However, the court reasonably denied Mr. Blumsack additional time to propose a new plan because the court found that the plan he intended to propose "would be futile."  App. at 267.  The court reasoned that, even if the plan could be funded by Mr. Blumsack's spouse's income or assets, Mr. Blumsack "does not suggest that he will cease engaging in activities that violate federal criminal laws."  App. at 267.  Accordingly, Mr. Blumsack would still "objectively lack[] good faith in seeking the benefits and protections of federal bankruptcy laws while continuously and contemporaneously undertaking (and earning income from) actions that violate federal criminal laws."  App. at 267.  The court's conclusion was not an abuse of discretion.

On appeal, Mr. Blumsack repeats his argument (at 33-34) that a plan could be funded by sources unrelated to cannabis, namely a deposit from his spouse's retirement account and his spouse's wages, making his current income selling marijuana "no longer relevant."  But Mr. Blumsack's household does not segregate their funds so cleanly.  Indeed, Mr. Blumsack testified that his and his spouse's paychecks were commingled in their checking account, and both were used for household expenses.  App. at 168:10-14; App. at 169:16-20.  Furthermore, the deposit of funds from his spouse's retirement account was also deposited into the joint checking account from which they paid for household expenses, such that Mr. Blumsack did not know how much of that deposit remained.  App. at 166:8-18.

24

Because their assets and paychecks have been commingled and used for common purposes, it is impossible to say that a payment from Mr. Blumsack's spouse's assets or paycheck is independent from his income from selling marijuana. As the Supreme Court has said, "[m]oney is fungible." *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 79 (2011). Shifting the contributions to the plan from Mr. Blumsack's paycheck to his spouse's merely allows more of Mr. Blumsack's paycheck to be used to pay for their shared expenses. And because all assets were commingled in their joint checking account, it is impossible to say whether the money in the account came from his spouse's retirement account, or whether the retirement account payment was exhausted paying for shared expenses and the money in their account was accumulated wages from his marijuana dispensary job.

In the end, even if Mr. Blumsack's spouse were to fund his plan, Mr. Blumsack and his spouse will continue to profit from illegal activity while obtaining the privilege of bankruptcy relief, something the bankruptcy court found to be bad faith. The precedents on which Mr. Blumsack relies—*In re McGinnis*, 453 B.R. 770 (Bankr. D. Ore. 2011), and *In re Johnson*, 532 B.R. 53 (Bankr. W.D. Mich. 2015)—do not suggest that Mr. Blumsack could continue to be employed selling marijuana and let his spouse pay for his plan. The court in *McGinnis* merely stated that it would consider another plan if the debtor could show it complied with the Bankruptcy Code, without saying how to do so. 453 B.R. at 773. And the court in *Johnson* required the debtor to exit the marijuana industry entirely, not stay in while allowing someone else to fund his

plan. 532 B.R. at 59. In his brief, for the first time in this case, Mr. Blumsack speculates (at 24) that he might change jobs in the future and complains (at 26) that the bankruptcy court did not order him to change jobs as happened in *Johnson*. To the extent Mr. Blumsack now contends it was error for the bankruptcy court not to require him to find new employment, Mr. Blumsack cites no case *requiring* the bankruptcy court to order him to change jobs. Moreover, Mr. Blumsack had ample time to consider for himself whether to change careers. *See*, *e.g.*, App. at 122 (Mr. Blumsack's objection to the motion to dismiss discussing the *Johnson* decision). The United States Trustee's motion to dismiss made very clear that his daily responsibilities at his job jeopardized his ability to receive the privilege of a bankruptcy discharge. Yet even knowing the risk and aware of the *Johnson* decision, he chose to keep selling marijuana.

In sum, it was not an abuse of discretion for the court to deny additional time to propose a plan that continued to allow Mr. Blumsack to profit from violating federal law while receiving the Bankruptcy Code's protections, and accordingly it was not an abuse of discretion to dismiss the case under section 1307(c)(5).

## CONCLUSION

For these reasons, the United States Trustee respectfully asks this Court to affirm the order entered below.

Respectfully submitted,

WILLIAM K. HARRINGTON
United States Trustee for Region 1

June 26, 2023

By: /s/ *Frederick G. Hall*
FREDERICK GASTON HALL
Trial Attorney

RAMONA D. ELLIOTT
Deputy Director/General Counsel
P. MATTHEW SUTKO
Associate General Counsel
FREDERICK GASTON HALL
Trial Attorney

WILLIAM K. HARRINGTON
United States Trustee for Region 1
RICHARD T. KING
Assistant United States Trustee
ERIC K. BRADFORD
STEPHEN E. MEUNIER
Trial Attorneys

Department of Justice
Executive Office for
  United States Trustees
441 G Street, NW, Suite 6150
Washington, DC 20530
Tel.:  (202) 307-1399
Fac.:  (202) 307-2397
frederick.g.hall@usdoj.gov

Department of Justice
Office of the United States Trustee
446 Main Street, 14th Floor
Worcester, MA 01608
Tel.:  (508) 793-0555
Fac.:  (508) 793-0558
eric.k.bradford@usdoj.gov
stephen.meunier@usdoj.gov

27

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing brief complies with the type-volume limitations set forth in Federal Rule of Bankruptcy Procedure 8015(a)(7)(B) in that the brief contains 6,836 words as counted by Microsoft Word.

/s/ *Frederick G. Hall*
FREDERICK GASTON HALL
Trial Attorney

IN THE UNITED STATES BANKRUPTCY APPELLATE PANEL
FOR THE FIRST CIRCUIT

_____

BAP No. MW 23-003

_____

Bankruptcy Case No. 21-40248-EDK

_____

In re SCOTT H. BLUMSACK, d/b/a Mass Athletics, LLC, Debtor.

_____

SCOTT H. BLUMSACK, Appellant,

v.

WILLIAM K. HARRINGTON, United States Trustee, Appellee.

_____

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

**STATEMENT REGARDING RELATED CASES**
**1st Cir. BAP L.R. 8014-1(a)(2)**

_____

The undersigned certifies that the undersigned knows of no related cases or appeals as that term is defined in 1st Cir. BAP L.R. 8014-1(a)(2)(A).

> /s/ *Frederick G. Hall*
> FREDERICK GASTON HALL
> Trial Attorney
> Department of Justice
> Executive Office for
>  United States Trustees
> 441 G Street, NW, Suite 6150
> Washington, DC 20530
> Tel.: (202) 307-1399
> Fac.: (202) 307-2397
> frederick.g.hall@usdoj.gov